# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ASHLEY BONDS,<br><br>    Plaintiff,<br><br>v.<br><br>TABLETOPS UNLIMITED, INC. d/b/a TTU,<br><br>    Defendant. | Case No.: 4:21-CV-01364 |

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff **ASHLEY BONDS,** by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **CASEY DEVOTI & BROCKLAND** hereby submits the following Complaint and Demand for Jury Trial:

### NATURE OF THE ACTION

1. This is a product liability action seeking recovery for substantial personal injuries and damages suffered by **Plaintiff Ashley Bonds** (hereafter referred to as "Plaintiff"), after Plaintiff was seriously injured by a "Philippe Richard Pressure Cooker" Model Number YPC 2055C (hereafter generally referred to as "pressure cooker(s)").

2. Defendant Tabletops Unlimited, Inc. d/b/a TTU (hereinafter generally referred to as "Defendant TTU") designs, manufactures, markets, imports, distributes and sells a wide-range of consumer products, including the subject "Phillippe Richard Pressure Cooker," which specifically includes the aforementioned pressure cooker at issue in this case.

3. On or about November 28, 2016, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid suddenly and unexpectedly exploding off the pressure cooker's pot during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.

4. As a direct and proximate result of Defendant TTU's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, wage loss, physical pain, mental anguish, and diminished enjoyment of life.

## THE PARTIES

5. Plaintiff was and is, at all relevant times, a resident and citizen of the City of Saint Ann, County of Saint Louis, State of Missouri, and is therefore a citizen of the State of Missouri for purposes of diversity under 28 U.S.C. § 1332.

6. Plaintiff's attorneys at Johnson Becker, PLLC have been appointed special counsel by David A. Sonse (Trustee") as the duly appointed and acting Chapter 7 Trustee of the Bankruptcy Estate of Ashley Bonds, Case No.: 21-40971-399 (E.D. of M.O.). It is Trustee's wish that this matter proceed with Ashley Bonds as the named Plaintiff. Therefore, Plaintiff files this lawsuit with the requisite standing consistent with *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). *See also Matter of Young*, 93 B.R.590, Bkrtcy. S.D. Ohio, 1988.

7. Defendant TTU is a California Corporation, which has a headquarters and registered service address of 23000 Avalon Blvd., Carson, CA 90745, and is therefore a citizen of the State of California for purposes of diversity under 28 U.S.C. § 1332.

8. Defendant TTU designs, manufacturers, markets, imports, distributes and sells a variety of consumer products including pressure cookers, cutlery, pots, and pans, amongst others.

**JURISDICTION & VENUE**

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

10.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

11.     Venue and jurisdiction are proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Missouri and has intentionally availed itself of the markets within Missouri through the promotion, sale, marketing, and distribution of its products.

12.     Jurisdiction over Defendant TTU is also proper under the due process provisions of the Missouri and United States constitutions. *See e.g*. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 141 S. Ct. 1017 (2021).

**FACTUAL ALLEGATIONS**

13.     Defendant TTU is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

14.     Defendant TTU warrants, markets, advertises and sell its pressure cookers as a means to cook "faster" and "healthier" allowing consumers to "preserve nutrients and flavors." [1]

---

[1] Attached hereto is Exhibit A is a copy of the Philippe Richard's 8 quart aluminum pressure cooker., *See*, e.g. pg. 1.

15. According to the Owner's Manual accompanying the individual unit sold, the pressure cookers purport to be designed with an "auto-lock system,"[2] and "triple safety features"[3] which include the misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use. Said "safety systems" include, but is not limited to, the following:

   a. The **PRESSURE REGULATOR** (1) fits onto the **STEAM VENT PIPE** (2). When the proper operating pressure (12 lbs/sq. in.) is reached, the pressure regulator will rock gently and control the pressure inside the cooker. The gentle rocking motion of the pressure regulator is an indication that the proper cooking pressure is being maintained.

   b. **The SAFETY LOCK** (3) automatically releases air from the unit as you begin heating the pressure cooker. As pressure builds, the safety lock slides up, causing the **LOCK PIN** (4) to lock the lid in place. The safety lock will be in the up position when the cooker is pressurized. When the safety lock is in the down position, the unit is depressurized and safe to open.

   c. The **SEALING RING** (6) fits around the inside rim of the lid (see below) and forms a pressure-tight seal between the **LID** (7) and the **BODY** (8) of the cooker. If the vent pipe becomes clogged and excess pressure cannot be released normally, steam is automatically released by the **OVERPRESSURE PLUG** (9). This is a safety device and you should check its condition periodically.

16. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

17. In the late hours of Sunday, November 27, 2016 Plaintiff began to prepare some chicken soup to enjoy the next evening for dinner.

---

[2] Id.

[3] Id.

4

18.     Plaintiff placed 2-3 chicken legs, chopped carrots, diced potatoes and onions, and water until the pot was a little less than halfway full. She seasoned the soup with salt and pepper and secured and locked the lid. Plaintiff then placed the pressure cooker on her glass cooktop stove and turned the range to medium/high heat.

19.     Plaintiff let the soup cook for approximately 2 hours. After it was done cooking, Plaintiff turned her stovetop off to allow the pressure cooker to cool down and depressurize.

20.     After giving her child a bath and putting him to bed, Plaintiff returned to the kitchen and saw that no more steam was coming out of the cooker. She went to open the pressure cooker so she could finish preparing the soup and store it for the following evening.

21.     As Plaintiff started to open the cooker, the lid turned easily but just as it started turning, it quickly popped out of her hands and the hot contents of the pressure cooker shot out and splattered Ashley's chest, shoulders, and neck.

22.     Plaintiff subsequently drove herself to the Emergency Room at Mercy Hospital in St. Louis to receive emergency medical treatment.

23.     AS a result of the incident on November 28, 2021, Plaintiff incurred medical bills in excess of $2,000.00, as well as permanent scarring to her chest, shoulders and neck.

24.     Plaintiff and her family used the pressure cooker for its intended purpose of preparing meals and did so in a manner that was reasonable and foreseeable by the Defendant TTU.

25.     However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by Defendant TTU in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper

5

use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

26. Defendant TTU's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

27. Further, Defendant TTU's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

28. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

29. As a direct and proximate result of Defendant TTU's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries.

30. Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendant TTU's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CAUSES OF ACTION

### COUNT I

### STRICT PRODUCTS LIABILITY – MANUFACTUERING, FAILURE TO WARN AND/OR DESIGN DEFECT

31. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

32. At the time of Plaintiff's injuries, Defendant TTU's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

33. Defendant TTU's pressure cookers were in the same or substantially similar condition as when they left the possession of Defendant TTU.

34. Plaintiff and her family did not misuse or materially alter the pressure cooker.

35. The pressure cooker did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

36. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Pressure Cookers safe. Specifically:

   a. The pressure cookers designed, manufactured, sold, and supplied by Defendant TTU were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c. Defendant TTU failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d. Defendant TTU failed to warn and place adequate warnings and instructions on the pressure cookers;

7

  e. Defendant TTU failed to adequately test the pressure cookers; and

  f. Defendant TTU failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

37. Defendant TTU knew or should have known that the lid could explosively separating from the pot while under pressure during the normal, foreseeable and directed use of the pressure cooker.

38. Defendant TTU's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

## COUNT II

### NEGLIGENCE – MANUFACTUERING, FAILURE TO WARN AND/OR DESIGN DEFECT

39. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

40. Defendant TTU has a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

41. Defendant TTU failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendant TTU knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

42. Defendant TTU was negligent in the design, manufacture, advertising, warning, marketing and sale of its pressure cookers. Specifically:

> g. The pressure cookers designed, manufactured, sold, and supplied by Defendant TTU were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;
>
> h. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;
>
> i. Defendant TTU failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;
>
> j. Defendant TTU failed to warn and place adequate warnings and instructions on the pressure cookers;
>
> k. Defendant TTU failed to adequately test the pressure cookers; and
>
> l. Defendant TTU failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

43. Defendant TTU knew or should have known that the lid could explosively separating from the pot during the normal, foreseeable and directed use of the pressure cooker.

44. Defendant TTU's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

## COUNT III

## **BREACH OF IMPLIED WARRANTIES**

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein, and further alleges:

46. At the time Defendant TTU marketed, distributed and sold its pressure cookers to the Plaintiff in this case, Defendant TTU warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

47. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

48. Defendant TTU's pressure cookers were not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

49. The Plaintiff in this case purchased and used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

50. Defendant TTU's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

## **INJURIES & DAMAGES**

51. As a direct and proximate result of Defendant TTU's negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident. Plaintiff is entitled to recover damages from Defendant TTU for these injuries in an amount which shall be proven at trial.

52. As a direct and proximate result of Defendant TTU's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant TTU in an amount to be proven at trial.

53. As a direct and proximate cause of Defendants' negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred medical treatment expenses and will continue to incur expenses for medical care and treatment in excess of $2,000.00, as well as other expenses, as a result of the severe burns she suffered from the incident. Plaintiff is entitled to recover damages from Defendant TTU for her past, present and future medical and other expenses in an amount which shall be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant TTU as follows:

A.  That Plaintiff has a trial by jury on all of the claims and issues;

B.  That judgment be entered in favor of the Plaintiff and against Defendant TTU on all of the aforementioned claims and issues;

C.  That Plaintiff recover all damages against Defendant TTU, general damages and special damages, including economic and non-economic, to compensate the Plaintiff for her injuries and suffering sustained because of the use of the Defendant TTU's defective pressure cooker;

D.  That all costs be taxed against Defendant TTU;

E.  That prejudgment interest be awarded according to proof;

F.  That Plaintiff be awarded attorney's fees to the extent permissible under Missouri law; and

G.      That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**CASEY DEVOTI & BROCKLAND**

Dated: <u>November 18, 2021</u>    by    */s/ Matthew J. Devoti*

———————————————
Matthew J. Devoti    #47751
Matthew C. Casey    #49662
3201 Washington Avenue
St. Louis, Missouri   63103
(314) 421-0763
(314) 421-5059 Fax
mdevoti@caseydevoti.com
mccasey@caseydevoti.com

*In association with:*

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq. (MN #0258696)
*Pro Hac Vice to be filed*
Kenneth W. Pearson, Esq. (MN #016088X)
*Pro Hac Vice to be filed*
Adam J. Kress, Esq.  (MN #0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (fax)
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff***